Certiorari Denied, September 12, 2016, No. S-1-SC-36047

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2016-NMCA-089

Filing Date: July 27, 2016

Docket No. 33,840

STATE OF NEW MEXICO,

  Plaintiff-Appellee,

v.

THOMAS MORGAN,

  Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY
Drew D. Tatum, District Judge

Hector H. Balderas, Attorney General
Santa Fe, NM
Tonya Noonan Herring, Assistant Attorney General
Albuquerque, NM

Bennett J. Baur, Chief Public Defender
Kimberley Chavez Cook, Assistant Public Defender
Santa Fe, NM

OPINION

HANISEE, Judge.

{1}     Defendant appeals his conviction for child solicitation by electronic device, in violation of NMSA 1978, Section 30-37-3.2 (2007). Defendant makes two arguments: (1) Defendant's attorney was constitutionally ineffective by not advising him that pleading no contest to the charge before July 1, 2013, would exempt him from registration requirements under the Sex Offender Registration and Notification Act (SORNA), NMSA 1978, §§ 29-11A-1 through -10 (1995, as amended through 2013); and (2) enforcing SORNA's registration requirement to child solicitation by electronic device violates Defendant's due process rights. Rejecting both arguments, we affirm.

1

## I.  BACKGROUND

**{2}**   According to the factual allegations in the criminal complaint, "[D]efendant contacted a profile of what he believed was a 15-year-old girl [who was in fact a police officer posing as a 15-year-old girl] from Clovis, New Mexico, online using a computer." Defendant and the person he believed to be the 15-year-old girl exchanged numerous communications, and the complaint alleges that at some point—at Defendant's instigation—the communications took on a sexual tone. Defendant eventually sought and arranged an in-person meeting. When Defendant arrived, he was arrested.

**{3}**   On November 29, 2011, Defendant was charged by information with one count of violating Section 30-37-3.2(A), (C)(1), which classifies as a third-degree felony "knowingly and intentionally soliciting a child under sixteen years of age, by means of an electronic communication device, to engage in sexual intercourse, sexual contact or in a sexual or obscene performance . . . and also appear[ing] for, attend[ing] or [being] present at a meeting that the person arranged pursuant to the solicitation[.]"

**{4}**   Defendant's trial was set for April 10, 2012, and his appointed attorney entered her appearance on February 28, 2012. At Defendant's attorney's behest, the district court reset Defendant's trial for June 18, 2012. The trial was continued a second, third, and fourth time at Defendant's attorney's request, culminating in a fifth trial setting which scheduled jury selection and trial to take place on June 27, 2013.

**{5}**   Also while Defendant's case was pending, and more importantly from the standpoint of this appeal, on March 16, 2013, the New Mexico Legislature passed and on April 3, 2013, the Governor signed into law House Bill 570, enrolled as 2013 N.M. Laws, ch. 152, § 1, effective July 1, 2013 (hereinafter HB 570). HB 570 amended Section 29-11A-3 (2013) to add child solicitation by electronic communication device to the list of offenses that are subject to SORNA's mandatory registration requirements. *See* § 29-11A-3(I)(11). Notably, HB 570 did not impose SORNA registration requirements on all persons convicted of child solicitation by electronic communications device; instead, the registration requirement only applies to "convictions occurring on or after July 1, 2013." Section 29-11A-3(I)(11).

**{6}**   Here, Defendant did not plead guilty and was not sentenced before July 1, 2013. Instead, on June 6, 2013, Defendant, through his attorney, moved to continue the June 27, 2013 trial date. Over the State's opposition, the district court granted Defendant's motion, thereby closing Defendant's window by which he could have avoided the SORNA registration requirement upon conviction of the charged offense. Finally, on March 28, 2014, after another set of continuances that are of no relevance to this appeal, Defendant entered into a plea agreement with the State. Under the plea agreement, Defendant pleaded no-contest to child solicitation by electronic communication device on the condition that he receive no more than one year's imprisonment as a sentence. Defendant also reserved the right to appeal his conviction based on the following issue: "whether it is constitutional to require [D]efendant to register pursuant to [SORNA] when the crime was committed on or

2

about October 8, 2011 and the conviction occurred on March 28, 2014."

## II.     DISCUSSION

**{7}** On appeal, Defendant argues (1) that his attorney was constitutionally ineffective by failing to advise him of the benefits of pleading guilty to the information and being sentenced before July 1, 2013; and (2) due process required that Defendant be advised that he would be required upon conviction to register as a sex offender at the time he was charged in 2011, instead of at the time he pleaded guilty in 2014. We address each argument in turn.

### 1.     Reconciling Section 29-11A-3 in 2014 and the Court's Decision in *Ho*

**{8}** The Legislature intended HB 570 to "reconcil[e] multiple amendments to [Section 29-11A-3] in Laws 2007." *See* HB 570, 51st Leg., 1st Sess. (N.M. 2013), available at https://www.nmlegis.gov/Sessions/13 Regular/bills/house/HB0570.html. HB 570's reference to "multiple amendments" in Laws 2007 were two bills that, while passed during the same legislative session, purported to both add *and* remove child solicitation by electronic communication device to the list of offenses subject to SORNA's mandatory registration requirements. We described the legislative snafu in *State v. Ho*, 2014-NMCA-038, 321 P.3d 147, as follows:

> Section 29-11A-3(E) [now Section 29-11A-3(I)] and Section 29-11A-5(E) . . . list the crimes for which registration as a sex offender is required and for which the department of public safety must keep records, respectively. *See* §§ 29-11A-3(E) and -5(E). In 2007, the Legislature passed two bills that amended both sections. One, Senate Bill (SB) 735, was introduced on January 31, 2007, and passed by the Senate on March 9, 2007. . . . The other, SB 528, was introduced on January 25, 2007, and passed by the Senate on March 11, 2007. . . . Thus, while SB 528 was introduced first, it was passed in the Senate second. Both bills were passed in the House of Representatives on March 17, 2007, and signed by the Governor on March 29, 2007.
>
> . . . .
>
> The final version of SB 528 did not incorporate the amendments to Section 29-11A-3(E) passed by the Senate two days before. Instead, other than the new crime it added, SB 528 simply incorporated the list of offenses covered by SORNA as it existed before passage of SB 735. *See* 2007 N.M. Laws, ch. 69, §§ 5, 6; § 29-11A-3(E).

2014-NMCA-038, ¶¶ 3-5 (alterations and footnote omitted).

**{9}** Under NMSA 1978, Section 12-1-8(B) (1977, amended 2013), when the Legislature passes "two or more irreconcilable acts dealing with the same [subject matter] . . . the last

act signed by the governor shall be presumed to be the law." Section 12-1-8(B) requires the Compilation Commission to compile only the last-signed act into the NMSA, and in this case the Compilation Commission chose to compile SB 528, which did not include child solicitation by electronic communications device as a registrable offense under SORNA. *Ho*, 2014-NMCA-038, ¶ 7.

**{10}** Prior to *Ho*, in *State v. Smith*, 2004-NMSC-032, ¶¶ 20-21, 136 N.M. 372, 98 P.3d 1022, our Supreme Court had rejected the mechanical rule set out in Section 12-1-8. In doing so, the Court noted that statutes must be construed so as not to conflict with one another in order to give effect to the Legislature's overall intent with respect to a given subject matter. *Id.* ¶ 8. Our Supreme Court stated that whenever the Legislature amends a statute, Article IV, Section 18 of the New Mexico Constitution requires the Legislature to set out the "section thereof as revised, amended or extended . . . in full." *Smith*, 2004-NMSC-032, ¶ 2 (internal quotation marks and citation omitted). This constitutional requirement, combined with the "the dynamic and sometimes frenzied way in which bills are introduced, passed, and signed into law during a single legislative session," *id.* ¶ 20, led our Supreme Court to conclude that the mere fact that a later-enacted amendment restates the language of the statute prior to an earlier amendment passed in the same legislative session does not imply a repeal of the earlier amendment as a matter of course. *Id.* ¶ 18. Instead, *Smith* adopted a presumption that the Legislature intends all of the amendments it passes in a single legislative session to be made effective. *See id.* ¶ 21. This presumption may be overcome or reinforced by consultation of contextual signals of legislative intent, such as the amendment's announced purpose. *See id.* ¶ 14.

**{11}** Applying *Smith* in *Ho*, we rejected the Compilation Commission's conclusion that SB 735 and SB 528 were irreconcilable. *Ho*, 2014-NMCA-038, ¶¶ 9-11. We noted that the titles of both bills "indicate that each bill addresses a distinct issue[, and] the substantive changes to SORNA made by each bill do not conflict." *Ho*, 2014-NMCA-038, ¶ 11 (citations omitted). In light of this holding, child solicitation by electronic communications device in fact *was* a registrable offense under SORNA prior to HB 570's enactment, even though the Compilation Commission only chose to compile SB 528 in NMSA. *Ho*, 2014-NMCA-038, ¶ 11. But we went on to hold that the defendant (who had been convicted of child solicitation by electronic communications device) was not required to register under SORNA based on the Legislature's subsequent passage of HB 570, which amended SORNA to only require registration by persons whose convictions for child solicitation by electronic communications device became final on or after July 1, 2013. *Ho*, 2014-NMCA-038, ¶¶ 13, 14.

**{12}** The upshot of HB 570's enactment on April 3, 2013, was that it created a three-month window during which any defendant facing pending child solicitation by electronic communications device charges was the master of his or her own SORNA destiny. That is because at any time between HB 570's enactment and July 1, 2013, a defendant, including Defendant in this case, could accept a plea agreement, or even simply plead guilty to the indictment or information. If the ensuing judgment and sentence was imposed before July

4

1, 2013, then that defendant would not be subject to SORNA's registration requirement for the offense or conviction.

**2.       Defendant's No Contest Plea After the Effective Date of HB 570 Was Not the Result of Ineffective Assistance of Counsel**

**{13}**     "Criminal defendants are entitled to reasonably effective assistance of counsel under the Sixth Amendment of the United States Constitution." *State v. Crocco*, 2014-NMSC-016, ¶ 12, 327 P.3d 1068 (internal quotation marks and citation omitted). Claims of ineffective assistance of counsel premised on a defendant's alleged entry into an involuntary plea require analysis under the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *State v. Paredez*, 2004-NMSC-036, ¶ 13, 136 N.M. 533, 101 P.3d 799. To establish ineffective assistance of counsel, a defendant must show: "(1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense." *Id.* (internal quotation marks and citation omitted).

**{14}**     The test for deficient performance under *Strickland* "is whether the counsel's representation fell below an objective standard of reasonableness." *Paredez*, 2004-NMSC-036, ¶ 14 (internal quotation marks and citation omitted). We "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* (internal quotation marks and citations omitted). Moreover, "we do not second guess defense counsel's strategic decisions" when applying the deficient performance prong. *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 17, 130 N.M. 179, 21 P.3d 1032.

**{15}**     The "prejudice" element of an ineffective assistance of counsel claim is not satisfied when the defendant proves that a particular act or omission by his counsel was prejudicial to his defense; instead, the defendant must show a "reasonable probability" that but for the attorney's objectively unreasonable conduct, the result of the proceedings would have been different. *State v. Brazeal*, 1990-NMCA-010, ¶ 23, 109 N.M. 752, 790 P.2d 1033.

**{16}**     The Sixth Amendment right to constitutionally effective assistance of counsel (and with it *Strickland*'s two-part inquiry) applies both to guilty pleas entered based on the advice of counsel and to the process of negotiating a plea agreement from which many guilty pleas result. *See Lafler v. Cooper*, ___ U.S. ___, 132 S.Ct. 1376, 1384 (2012). It also applies to a criminal defendant's decision *not* to plead guilty. *State v. Cordova*, 2014-NMCA-081, ¶ 12, 331 P.3d 980. The United States Supreme Court addressed how to apply the prejudice prong of the *Strickland* test when "ineffective advice led not to an offer's acceptance but to its rejection." *Lafler*, ___ U.S. at ___, 132 S.Ct. at 1384-85.

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and

that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at ___, 132 S.Ct. at 1385. With respect to potential remedies, the Court explained that in some cases, "the proper exercise of discretion to remedy the constitutional injury may be to require the prosecution to reoffer the plea proposal." *Id.* at ___, 132 S.Ct. at 1389.

**{17}** "When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record." *Crocco*, 2014-NMSC-016, ¶ 14 (internal quotation marks and citation omitted). "If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance." *Id.* (internal quotation marks and citation omitted). A prima facie case of ineffective assistance of counsel is made on appeal where: "(1) it appears from the record that counsel acted unreasonably; (2) the appellate court cannot think of a plausible, rational strategy or tactic to explain counsel's conduct; and (3) the actions of counsel are prejudicial." *State v. Herrera*, 2001-NMCA-073, ¶ 36, 131 N.M. 22, 33 P.3d 22 (internal quotation marks and citation omitted).

**{18}** Defendant's ineffective assistance of counsel argument is straightforward: HB 570 amended Section 29-11A-3(I)(11) on April 3, 2013 to state that SORNA's registration requirement applies to "convictions [for child solicitation by electronic communication device] occurring on or after July 1, 2013[.]" Defendant argues that his attorney should have been, but was not aware of the Legislature's 2013 amendments to Section 29-11A-3 during this roughly three-month period of time. Defendant contends that his attorney's ignorance resulted in her failing to obtain a plea agreement or even advise Defendant of the merits of entering a straight guilty plea to the information in order to be sentenced before July 1, 2013, either of which would have exempted Defendant from SORNA's registration requirements.

**{19}** In *State v. Edwards*, we held that an attorney's failure to advise the defendant "that a plea of guilty or no contest will almost certainly subject the defendant to the registration requirements of SORNA . . . amounts to deficient performance under the *Strickland* test." *Edwards*, 2007-NMCA-043, ¶ 31, 141 N.M. 491, 157 P.3d 56. Defendant concedes that he was in fact aware of the collateral consequences of his guilty plea when he agreed to plead guilty to the solicitation charge after July 1, 2013. So by direct application of *Edwards*, Defendant was given competent representation because he was advised of the consequences of his plea. But *Edwards* does not answer the related but distinct question presented by this appeal: whether an attorney (in order to be minimally competent under the Sixth Amendment) must be aware of and advise an affected client regarding a recent change in the law that creates a benefit that will soon expire—here, SORNA amnesty for the charge of which Defendant was then accused of committing.

**{20}** The issue Defendant is arguing appears to be one of first impression. To be sure,

6

there are many cases considering ineffective assistance of counsel claims based on an attorney's failure to be aware of *future* changes to the law. For example, in *United States v. Gonzalez-Lerma*, 71 F.3d 1537, 1539-1540 (10th Cir. 1995), *overruled on other grounds*, *United States v. Flowers*, 464 F.3d 1127 (10th Cir. 2006) (en banc), the defendant was sentenced roughly twenty days before then President Clinton signed into law the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796, which allows district judges to impose a sentence below the mandatory minimum imposed by a statute if the defendant meets certain criteria. The defendant argued that his attorney was constitutionally ineffective by failing to seek a continuance of sentencing in order to give Defendant the opportunity to seek a sentence below the mandatory minimum. *Id.* at 1541-1542. The Tenth Circuit rejected the defendant's argument, reasoning that "[c]ounsel's assistance is not ineffective simply because counsel fails to base its decisions on laws that might be passed in the future. . . . Considering the attorney's perspective at the time of sentencing, it was not only unclear when the amendments would take effect, but also uncertain whether they would take effect at all." *Id.* at 1542 (citations omitted).

**{21}** Here, however, we are not presented with an ineffective assistance of counsel claim based on the mere *potential* for a change in the law that might benefit defendant. Instead, HB 570 made an immediate change to the law that gave Defendant the ability to avoid a specific consequence—sex offender registration—but only for a short time period and dependent on his willingness to plead guilty to the offense charged. Seen in this light, Defendant's argument acquires some force. If *Edwards* requires attorneys to be aware of the collateral SORNA consequences of a guilty plea, oughtn't they also be charged with awareness that their client can definitively circumvent the SORNA consequence of a plea of guilty if swiftly entered?

**{22}** But to demand that Defendant's attorney be aware of a three-month-long delay in the SORNA effective date, as expressed by HB 570, would require a particularly high level of attentiveness and diligence. And "*Strickland* does not guarantee perfect representation, only a 'reasonably competent attorney.' " *Harrington v. Richter*, 562 U.S. 86, 110 (quoting *Strickland*, 466 U.S. at 687). Before April 3, 2013, it surely would have been reasonable for Defendant's attorney to believe that child solicitation *was not* a registrable offense: after all, the Compilation Commission had not included child solicitation by electronic device in the list of registrable offenses in NMSA. It is not reasonable, however, to require Defendant's counsel to anticipate the conflicting amendments to Section 29-11A-3 and correctly predict the way this Court would later analyze Section 29-11A-3 when it decided *Ho*. Yet here we need not decide whether Defendant's attorney should have known about the three-month amnesty after April 3, 2013, because Defendant has failed to demonstrate on this record that the fact that his case persisted beyond July 1, 2013 was caused by his attorney's failure to advise him of his opportunity for amnesty from application of SORNA.

**{23}** Defendant's decision to raise his ineffective assistance of counsel claim on direct appeal means that he must show how the record establishes unreasonable conduct by his attorney in this case. *See Herrera*, 2001-NMCA-073, ¶ 36. Here, that means Defendant must

show that the record supports a finding that his attorney failed to advise Defendant about the effect of HB 570 and advisability of entering into a plea agreement and proceeding to sentencing before July 1, 2013. But the only evidence in the record Defendant can point to is his reservation of the right to appeal a due process challenge to the application of SORNA's notice requirements to Defendant for conduct occurring prior to July 1, 2013, in his plea agreement. Defendant argues that this proves his attorney was not aware of HB 570 before July 1, 2013. We are not persuaded. The fact that Defendant's March 2014 plea agreement reserves a due process challenge to Section 29-11A-3 hardly speaks to what Defendant's attorney knew or did not know between April 3 and July 1, 2013. In other words, the fact that Defendant's attorney reserved a different issue for appellate review in March 2014 does not imply that she was ignorant of the SORNA amnesty window in 2013. Thus, even if we were to agree with Defendant's contention that his attorney was required to be aware of HB 570 in order to provide reasonably satisfactory assistance of counsel, the record does not support a finding that his attorney was in fact unaware of HB 570 during the relevant time period. This conclusion is sufficient by itself to decide Defendant's ineffective assistance of counsel claim on direct appeal. *See Herrera*, 2001-NMCA-073, ¶ 36.

**{24}**     Even if the record supported a finding that Defendant's attorney did not advise Defendant about the Legislature's passage of HB 570, Defendant must show why he was prejudiced by his attorney's failure to do so: in other words, Defendant must show

> that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, ___U.S. at ___, 132 S.Ct. at 1385. In this case, Defendant argues that he would have entered into a plea agreement with the State between April 3, 2013, and July 1, 2013, and that his attorney's errors caused him not to do so.

**{25}**     The record before us does not support Defendant's assertion. At a pretrial conference on June 25, 2012, the State mentioned that the parties were in the process of negotiating a plea agreement. And at a docket call on March 17, 2014, the State mentioned that it had made a plea agreement offer in 2012. But these two references to the existence of plea negotiations in 2012 are insufficient to demonstrate prejudice on direct appeal. The mere existence of a plea offer in 2012 has no bearing on whether Defendant would have accepted it, even assuming the offer remained available between April 3, 2013 and July 1, 2013.

**{26}**     Defendant responds that we should infer prejudice based on the fact that Defendant's incarceration would have been the same had he entered into the plea agreement before July 1, 2013. In other words, Defendant argues that the fact that he entered into a plea agreement

8

in 2014 *ipso facto* proves that he would have entered into the same agreement before July 1, 2013. But the record does not contain any evidence of the State's 2012 plea offer, so there is no way to determine that the terms of the 2014 plea agreement are the same as or worse than the 2012 offer. Indeed, since we can infer that Defendant rejected the 2012 offer (he does not contend his attorney failed to communicate it to him), an opposite inference is more plausible.

**{27}** Defendant finally appears to suggest that we should conclude that he was prejudiced by his attorney's failure to advise him about HB 570 based on the fact that the sole difference between a child solicitation by electronic communications device conviction entered before July 1, 2013 and one entered afterward is the SORNA registration requirement. While it is true that sex offender registration was required after, but not before July 1, 2013, that hardly implies that Defendant would have pleaded guilty to the information even without a plea agreement with the State simply to avoid the registration requirement. Child solicitation by electronic communications device is a third-degree felony when the child is between thirteen and sixteen and the defendant appears at a meeting arranged pursuant to the solicitation. *See* Section 30-37-3.2(C)(1). Therefore, a straight guilty plea to the information would have exposed Defendant to a possible sentence of six years' confinement. *See* NMSA 1978, § 31-18-15(A)(8) (2007, amended 2016). It is not self-evident that possibly six years imprisonment and no registration is preferable to the maximum one-year prison term followed by ten years sex offender registration provided for in the plea agreement into which Defendant entered and the district court ultimately accepted. Accordingly, Defendant has failed to demonstrate that he suffered prejudice as a result of his attorney's failure to advise him of the Legislature's SORNA amnesty window for pending child solicitation charges resolved between April 3, 2013 and July 1, 2013.

## 2. Defendant Failed to Preserve His Due Process Argument

**{28}** Defendant's second issue on appeal is that his right to due process was violated when the district court failed to notify him that HB 570 had made registration under SORNA applicable only to convictions made final after July 1, 2013. Defendant contends that had the district court alerted him to the existence of HB 570 between April 3 and July 1, 2013, Defendant would have entered a guilty plea to the information in order to avoid the registration requirement.

**{29}** To the extent that Defendant's argument can be distinguished from his ineffective assistance of counsel argument, Defendant failed to preserve it for appellate review by reserving it in his conditional plea agreement. Normally, "a voluntary guilty plea ordinarily constitutes a waiver of the defendant's right to appeal his conviction on other than jurisdictional grounds." *State v. Hodge*, 1994-NMSC-087, ¶ 14, 118 N.M. 410, 882 P.2d 1. A conditional plea, however, "enable[s] a defendant to reserve a significant pretrial issue for appeal in a case in which conviction seems certain unless the defendant prevails on the pretrial issue." *State v. Celusniak*, 2004-NMCA-070, ¶ 7, 135 N.M. 728, 93 P.3d 10 (internal quotation marks and citation omitted).

9

**{30}** Rule 5-304(A)(2) NMRA governs conditional pleas, and provides that "[w]ith the approval of the court and the consent of the state, a defendant may enter a conditional plea of guilty or no contest, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pre-trial motion." Thus, a "defendant enters a [valid] conditional plea by (1) preserving the error through a pretrial motion, (2) obtaining consent of the prosecution, and (3) obtaining approval of the court." *Celusniak*, 2004-NMCA-070, ¶ 7.

**{31}** As we explained in *State v. Winters*, apart from the requirement of obtaining the district court's consent,

> [Rule 5-304] embodies two other principles: preservation and reservation. First, the rule requires that there be an "adverse determination of any specified pre-trial motion." Rule 5-304(A)(2). Therefore, a defendant must have preserved the issue for appellate review. Second, the defendant must specify the specific issue or issues that he or she is reserving for appellate review. That is, the defendant must "express an intention to reserve a particular pretrial issue for appeal."

*Winters*, 2015-NMCA-050, ¶ 18, 349 P.3d 524 (emphasis, internal quotation marks, and citation omitted).

**{32}** In order to preserve an error for appeal, "it must appear that a ruling or decision by the district court was fairly invoked[.]" Rule 12-216(A) NMRA. In order to fairly invoke the district court's ruling or decision on an issue, "it is essential that the ground or grounds of the objection or motion be made with sufficient specificity to alert the mind of the trial court to the claimed error or errors, and that a ruling thereon then be invoked." *State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 (internal quotation marks and citation omitted).

**{33}** Although Defendant reserved an appellate issue in his plea agreement, he never preserved the issue he now raises by making a pretrial motion to the district court. To be sure, Defendant could not have made such a motion prior to July 1, 2013, when any opportunity to be informed of HB 570's temporary SORNA amnesty was still open. But nothing prevented Defendant from raising the issue after July 1, 2013, while trial was pending and prior to his guilty plea in 2014. Having failed to make such a motion, Defendant did not preserve this issue for appellate review. Accordingly, we decline to address it any further.

## III.   CONCLUSION

**{34}** Defendant's conviction is affirmed.

**{35}   IT IS SO ORDERED.**

**I CONCUR:**

**MICHAEL E. VIGIL, Chief Judge**

**TIMOTHY L. GARCIA, Judge (dissenting).**

**GARCIA, Judge (dissenting).**

**{36}**   I respectfully dissent in this case. Recognizing that we are willing to review matters of record for prima facie evidence of ineffective assistance of counsel, we will not afford the same benefit to arguments based on matters outside the trial record. *See State v. Telles*, 1999-NMCA-013, ¶ 25, 126 N.M. 593, 973 P.2d 845 (holding that without any record, we cannot consider claims of ineffective assistance of counsel on direct appeal). However, based upon the evidence and record available in this case, I would hold that Defendant has made a prima facie showing of ineffective assistance of counsel. *See Herrera*, 2001-NMCA-073, ¶ 36 (recognizing that a prima facie case of ineffective assistance of counsel exists where: "(1) it appears from the record that counsel acted unreasonably; (2) the appellate court cannot think of a plausible, rational strategy or tactic to explain counsel's conduct; and (3) the actions of counsel are prejudicial"). Rather than affirm Defendant's conviction, Majority Opinion ¶ 34, this Court should remand this matter back to the district court for an evidentiary hearing to fully evaluate defense counsel's effectiveness when she failed to address the State's plea offer before July 1, 2013, the expiration date for the SORNA amnesty window. *See Crocco*, 2014-NMSC-016, ¶ 14 ("A prima facie case is made if [a d]efendant produces enough evidence to allow the fact-trier to infer the fact at issue and rule in [a d]efendant's favor." (alteration, internal quotation marks, and citation omitted)).

**{37}**   The majority determined that Defendant failed to established that he would have entered into a plea agreement prior to July 1, 2013, but for his attorney's errors. Majority Opinion ¶¶ 25-27. But a prima facie showing of ineffective assistance of counsel only requires a showing that counsel acted unreasonably and this error resulted in prejudice to the defendant. *Herrera*, 2001-NMCA-073, ¶ 36. Sufficient evidence was presented regarding the existence of the 2012 plea offer that ultimately resulted in a plea after the SORNA amnesty period expired. Majority Opinion ¶ 25. The only apparent issue regarding defense counsel's effectiveness would be whether she was aware of the SORNA amnesty window and sufficiently notified Defendant of its implications before the deadline. *See State v. Talley*, 1985-NMCA-058 ¶ 6, 103 N.M. 33, 702 P.2d 353 (identifying the duty to consult with the defendant regarding important decisions and developments as one of the proper considerations for ineffective assistance of counsel). This opportunity, to both consult and inform Defendant of the new SORNA amnesty window, existed at the pretrial conference on May 6, 2013, and again on June 6, 2013, when defense counsel moved to continue the

11

June 27, 2013 trial date. Defendant asserts that (1) no such notification occurred; and (2) had he been adequately notified, he would have timely addressed the pending 2012 plea offer before the expiration of the amnesty window. Based upon the record available for review, Defendant's assertion of error does meet the required standard of reasonableness that is necessary under *Herrera* to establish the first prima facie factor toward an ineffective assistance claim. 2001-NMCA-073, ¶ 36.

**{38}**     The second *Herrera* factor—a plausible explanation— does not appear to be at issue. *Id.* The State does not assert that a plausible or tactical reason exists for the failure to notify Defendant of the SORNA amnesty window that existed in 2013 while his charges and the June 27, 2013 trial were pending. And I cannot think of one.

**{39}**     Finally, the majority disputes whether the prejudice factor can be established based upon the record before us. Majority Opinion ¶¶ 25-27. The majority appears to base this position on the fact that the specific 2012 plea offer is not part of the evidence or contained in the record. Majority Opinion ¶ 26. However, once a recognized duty to consult with or inform a defendant regarding important decisions or developments in a case has been established, then a prima facie case of prejudice should exist that requires further evaluation and an explanation of why the duty was not met by counsel. *See Talley*, 1985-NMCA-058 ¶¶ 6-7 (noting that this Court has recognized ineffective assistance to exist when counsel is deficient in meeting any of the recognized duties to adequately represent a defendant in the adversarial process); *State v. Luna*, 1979-NMCA-048 ¶¶ 27-28, 92 N.M. 680, 594 P.2d 340 (remanding for an independent ineffective assistance of counsel hearing where counsel failed to take pretrial action to address the acquittals of co-defendants involved in the same conspiracy charge). Defendant has now offered sufficient inferential evidence of the existence of the 2012 plea offer that was only accepted after the SORNA amnesty deadline. This would be sufficient to show both attorney error and prejudice. *See Crocco*, 2014-NMSC-016, ¶ 14 (requiring the defendant to produce enough evidence to allow the court to infer the fact at issue). The appropriate means for fully addressing the more specific details and timing of counsel's failure to address the plea agreement before July 1, 2013, should be left to the district court during a remand hearing. *See Luna*, 1979-NMCA-048 ¶ 28 (leaving the specific reasons for counsel's inaction to be developed on remand once a prima facie showing of ineffectiveness has been satisfied).

**{40}**     In conclusion, I do not concur with the holding reached by the majority in this case. Sufficient inferential evidence was provided regarding ineffective assistance of counsel so as to bypass the necessity of habeas corpus proceedings. The issue of whether defense counsel was ineffective should have been remanded for an evidentiary hearing in the district court.

_____

**TIMOTHY L. GARCIA, Judge**